IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH M. WHITE, and <br> REBECCA D. WHITE, <br><br> Plaintiffs, <br><br> VS. <br><br> AMERIQUEST MORTGAGE, *et al.*, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br><br> CIVIL ACTION NO. H-18-4013 |

**MEMORANDUM AND OPINION**

In October 2018, Joseph White and Rebecca White, representing themselves, sued Ameriquest Mortgage Company; Wells Fargo Bank, N.A.; Structured Asset Mortgage Investments II Inc.; JPMorgan Chase Bank, N.A.; Issuing Entity Trust Bear Stearns ALT-A Trust 2005-5; and other unnamed defendants over a foreclosure dispute. Seeking injunctive and declaratory relief, damages, and to quiet title, the Whites allege wrongful foreclosure; unjust enrichment; violations of the Fair Debt Collection Practices Act and Pennsylvania's Fair Credit Extension Uniformity Act; slander of title; fraud in the concealment and fraud in the inducement; contract breach, rescission, and unconscionability; intentional and negligent infliction of emotional distress; and a RICO violation. The defendants have moved for summary judgment and to dismiss, submitting documents related to the mortgage, default, and foreclosure. The Whites have not responded or requested more time to do so.

After a careful review of the complaint, the motion, the record evidence, and the applicable law, the court grants the defendants' motion for summary judgment. (Docket Entry No. 16). An order of final judgment is separately entered.

The reasons are explained in detail below.

## I. Background

In March 2005, the Whites obtained a $136,000 home-mortgage loan from Ameriquest Mortgage Company. (Docket Entry No. 16-1 at 1). Their promissory note required them to make payments on the first day of each month for 30 years beginning on May 1, 2005. (*Id.*). The Whites were required to pay $859.62 each month until April 1, 2010, when the loan's interest rate became adjustable. (*Id.* at 1–2). From then, the interest rate was based on the London Inter-Bank Offered Rate index, meaning that the interest rate and the amount owed by the Whites each month were subject to change. (*Id.* at 2). The note provided that the interest rate would be recalculated every six months, and that the Whites would be in default if they did "not pay the full amount of each monthly payment" when due. (*Id*. at 2–3). A default meant that the defendants could send the Whites notice that they had to pay the overdue amount within 30 days, or their entire loan balance would become immediately due. (*Id*. at 3).

The Whites' deed of trust also required them to make timely payments under the note. (Docket Entry No. 16-2 at 4). If the Whites missed payments and did not repay the overdue amounts, even after receiving notice and time to do so, the deed allowed the defendants to demand "immediate payment" of the full loan balance. (*Id*. at 13). After giving the Whites notice and an opportunity to reinstate the loan, the defendants had the right to sell the Whites' home if they failed to pay the amount due. (*Id.* at 14).

The deed stated that Ameriquest, the trustee, could add or appoint successor trustees "at its option" and "without the necessity of any formality other than a [written] designation" by Ameriquest. (*Id.* at 15). Ameriquest assigned the deed to JPMorgan, and JPMorgan later assigned the deed to Bank of New York Mellon. (*See* Docket Entry Nos. 16-3, 16-4). Under the second assignment, Bank of New York Mellon became JPMorgan's successor in interest and trustee for

Structured Asset Mortgage Investments II Inc., Bear Sterns ALT-A Trust, and Mortgage Pass-Through Certificates, Series 2005-5. (Docket Entry No. 16-4 at 1). The assignments were recorded in the official public records of Harris County. (Docket Entry No. 16 at 16).

The Whites stopped making loan payments in January 2018. (Docket Entry No. 16-6 at 2–3). In February 2018, Specialized Loan Servicing LLC, the loan servicer, sent the Whites written notice that they were in default and owed $1,672.61, giving them 33 days to cure. (Docket Entry No. 16-7 at 1). The notice reminded the Whites that failing to make the necessary payment by the deadline could result in the full loan balance becoming due and the sale of their home. (*Id.*).

The Whites did not cure the default. (Docket Entry No. 16-6 at 2–3). In August 2018, Bank of New York Mellon accelerated the loan and petitioned the 164th Judicial District Court of Harris County for an expedited foreclosure order. (Docket Entry No. 16-8). In December 2018, the court entered a default order permitting Bank of New York Mellon to foreclose on the Whites' home. (Docket Entry No. 16-9). On January 10, 2019, Bank of New York Mellon served the Whites written notice that a foreclosure sale was scheduled for February 5, 2019. (Docket Entry No. 16 at 6–7; Docket Entry No. 16-11 at 1). Bank of New York Mellon posted notice of the scheduled sale on January 14, 2019. (Docket Entry No. 16-10).

The Whites sued the defendants in this court in October 2018, asking for a temporary restraining order, permanent and preliminary injunctions, and declaratory relief. (Docket Entry Nos. 1, 2). The court declined to hold *ex parte* hearings and directed the Whites to serve the defendants. (Docket Entry Nos. 4, 11). Bank of New York Mellon received a summons on January 22, 2019, just two weeks before the foreclosure sale. (Docket Entry No. 16 at 7). Because the Whites challenged the foreclosure in federal court, the sale was automatically stayed under Texas Rule of Civil Procedure 736.11. (*Id.*).

The defendants have moved for summary judgment and to dismiss for failure to state a claim, arguing that the record shows that the Whites defaulted; received proper notice of the default and of the foreclosure sale; and did not cure the default. The defendants also argue that the Whites lack standing to challenge the deed assignments; their quiet-title and slander-of-title claims lacks merit; no misrepresentations were made to the Whites as to the loan, default, assignment, or foreclosure sale; and that the Whites, not the defendants, breached the note and deed.

## II. The Legal Standards

### A. Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"To withstand a Rule 12(b)(6) motion, [a] complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint

'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. (quotation and alteration omitted) (quoting *Twombly*, 550 U.S. at 558).

When a complaint fails to state a claim, the court should generally give the plaintiff a chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend"); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A court has discretion to deny a motion to amend for futility if the amended complaint would fail to state a plausible claim. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

B.     **Rule 9(b)**

Under Rule 9(b), in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). The pleader must

5

"specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177. A claim that a fraud allegation is not made with particularity is properly raised by a Rule 12(b)(6) motion to dismiss. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009).

### C. Rule 56

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd on Behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations and citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (alteration omitted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial

6

burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate "the precise manner in which" that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted). "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Because the Whites failed to respond to the defendant's motion, the issue is "whether the facts presented by the defendants create an appropriate basis to enter summary judgment against the plaintiff[s]." *Id.*

## III. Analysis[1]

### A. Contract Breach and Unconscionability

The Whites assert that the defendants breached the note and deed. (Docket Entry No. 1 at 36–37). "In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract

---

[1] The summary judgment evidence includes the note; deed; deed assignments; United States Department of Housing and Urban Development Settlement Statement; Michael Ward's affidavit; default notice; petition for an expedited order to foreclose; default order; posted notice of sale; notice of sale served on the Whites; and Branch Sheppard's affidavit on attorney's fees. (Docket Entry Nos. 16-1–16-12).

by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (alteration and quotation omitted).

The record evidence confirms that the Whites stopped paying their mortgage in January 2018, showing that they did not perform under the note and deed. (*See* Docket Entry No. 16-6 at 2–3). Even assuming they had performed, the Whites have not submitted or identified evidence supporting a reasonable inference of breach. The complaint alleges that the defendants breached the following deed provision:

> **Release**. Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION**.

(Docket Entry No. 16-2 at 14). The Whites argue that the defendants breached this provision by assigning the deed without releasing the Whites from their loan obligations. (*See* Docket Entry No. 1 at 36–37). This claim fails because the defendants' duties under this paragraph were contingent on the Whites' payment of the entire loan, and the undisputed record evidence shows that the unpaid principal is $101,660.17. (Docket Entry No. 16-6 at 3); *see Rice v. JPMorgan Chase Bank, Nat'l Ass'n*, No. H-15-416, 2015 WL 4112287, at *3 (S.D. Tex. July 7, 2015); *Conrad v. SIB Mortg. Corp.*, No. 4:14-CV-915, 2015 WL 1026159, at *6 (N.D. Tex. Mar. 6, 2015).

Contrary to the Whites' allegations, the record evidence shows that the defendants complied with the note's and deed's notice requirements. The deed provides:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a

date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

(Docket Entry No. 16-2 at 13; *see* Docket Entry No. 16-1 at 3).[2] The defendants sent the Whites notice of default and intent to accelerate on February 16, 2018. (Docket Entry No. 16-7). The notice gave the Whites 33 days to cure and explained the consequences of a continued default. The defendants did not accelerate the debt until August 2018, when they petitioned the 164th Judicial District Court of Harris County for a foreclosure order. (Docket Entry No. 16-8).

The Whites also assert that the note and deed are unconscionable. "Texas recognizes both substantive and procedural unconscionability." *Mattar v. BBVA Compass Bank, NA*, No. 13-16-496-CV, 2018 WL 2440382, at *5 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.). "Substantive unconscionability refers to the fairness of the agreement itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the agreement." *Id.* Unconscionability "defies precise legal definitions because it is not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula." *Id.* (quotation omitted). "Depending on context, factors that may be considered include the commercial atmosphere in which the agreement was made, the alternatives available to the parties, the parties' ability to

---

[2] Section 51.002(d) of the Texas Property Code governs foreclosure notices. It reads:

[T]he mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given.

9

bargain, any illegality or public-policy concerns, and the agreement's oppressive or shocking nature." *Id.*

The Whites allege that Ameriquest "failed to clarify . . . the terms of the Mortgage loan contract." (Docket Entry No. 1 at 35). "A party who signs a contract is presumed to know its contents," as long as he or she had "an opportunity to read the contract." *Kehoe v. Pollack*, 526 S.W.3d 781, 793–94 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The Whites do not dispute that they signed and agreed to the note and deed. They have not identified or submitted evidence raising an inference that they lacked an opportunity to read the documents, or that there was unfairness surrounding their agreement. The court has no basis to find that the note or deed were procedurally unconscionable.

The Whites also allege that the defendants seek to foreclose on a property that sustained damage during Hurricane Harvey, and that the unpaid loan balance was actually paid "by investors through [a] loan securitization scheme." (Docket Entry No. 1 at 35). These arguments fail to address the Whites' obligations or rights under the note or deed, and the Whites fail to point to evidence raising an inference that the agreements' terms were "inherently unfair." *Hogg v. Lynch, Chappell & Alsup, P.C.*, 553 S.W.3d 55, 73 (Tex. App.—El Paso 2018, no pet.). Based on the current record, there is no basis to find that the note or deed were substantively unconscionable.

B.  **Wrongful Foreclosure and Lack of Standing**

The Whites assert that the defendants "do not have an equitable right to foreclose" on the property. (Docket Entry No. 1 at 24–25). A wrongful-foreclosure claim requires: (1) a "defect" in the foreclosure sale; (2) a "grossly inadequate selling price"; and (3) a "causal connection between the defect and the grossly inadequate selling price." *Morris v. Deutsche Bank Nat'l Tr. Co.*, 528 S.W.3d 187, 197 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A wrongful-

foreclosure claim requires a foreclosure sale, and because this suit stayed the February 2019 sale, this claim fails as a matter of law.

The Whites appear to challenge the defendants' standing to foreclose on the ground that Mortgage Electronic Registration Systems, Inc. lacked authority to assign the deed. (Docket Entry No. 1 at 25–28). Mortgage Electronic Registration Systems was not involved in the loan or the two assignments. (*See* Docket Entry Nos. 16-1, 16-2, 16-3, 16-4). Even if Mortgage Electronic Registration Systems was involved, the Whites must assert a defect that would render the assignment void, not merely voidable. *EverBank, N.A., v. Seedergy Ventures, Inc.*, 499 S.W.3d 534, 542 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "Under Texas law, however, any lack of authority would make the assignment voidable." *Antony v. United Midwest Sav. Bank*, No. H-15-1062, 2016 WL 914975, at *3 (S.D. Tex. Mar. 10, 2016). If the assignment was voidable, the Whites lack standing to challenge it. *Reinagel v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 225–26 (5th Cir. 2013).[3] The Whites' challenge to the defendants' standing fails as a matter of law.

C. **Quiet Title and Slander of Title**

The Whites assert a quiet-title claim, alleging that the defendants do not have a valid interest in the home. (Docket Entry No. 1 at 28–29). "Under Texas law, to prevail in a suit to quiet title, the plaintiff must prove: (1) his right, title, or ownership in real property; (2) that the defendant has asserted a 'cloud' on his property, meaning an outstanding claim or encumbrance valid on its face that, if it were valid, would affect or impair the property owner's title; and (3) that the defendant's claim or encumbrance is invalid." *Warren v. Bank of Am., N.A.*, 566 F. App'x

---

[3] To the extent that the Whites allege that the defendants lack standing to foreclose on the property based on violations of pooling-and-services agreements, that claim fails because, at most, a pooling-and-services agreement violation would "merely entitle the [Whites] to sue for breach of the [agreement]." *Reinagel*, 735 F.3d at 228; *see Auriti v. Wells Fargo Bank, N.A.*, No. 3:12-CV-334, 2013 WL 2417832, at *9 (S.D. Tex. June 3, 2013).

379, 382 (5th Cir. 2014). "The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief, and must prove, as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove." *Henry v. Chase Home Fin., LLC*, No. H-11-668, 2011 WL 6057505, at *4 (S.D. Tex. Dec. 6, 2011) (alteration and quotation omitted). "Texas courts have made clear that a necessary prerequisite to the recovery of title is tender of whatever amount is owed on the note." *Antony*, 2016 WL 914975, at *5 (alteration and quotation omitted).

The deed gives the defendants, as mortgagees and loan servicers, the right to foreclose on and sell the Whites' home. (Docket Entry No. 16-2 at 14); *see* TEX. PROP. CODE § 51.0025; *Martins v. BAC Home Loan Serv., L.P.*, 722 F.3d 249, 255 (5th Cir. 2013); *Colton v. U.S. Nat'l Bank Ass'n*, No. 3:12-CV-3584-D, 2014 WL 2881451, at *2 (N.D. Tex. June 25, 2014). The Whites have not pointed to evidence supporting a plausible inference that the defendants' claim on their property is invalid. Undisputed record evidence shows that the Whites signed and agreed to the note and deed, giving the defendants the right to sell the home if they defaulted. The Whites did default, and they were properly notified of their default and the foreclosure sale. The Whites failed to cure the default or seek reinstatement. Even if the defendants failed to perfect their interest in the deed, as the Whites allege, the deed still binds the parties. *In re Casbeer*, 793 F.2d 1436, 1441 (5th Cir. 1986) ("Even if the deeds of trust had not been recorded, they would have been binding on the parties to the deeds." (citing TEX. PROP. CODE §13.001(b))); *Green v. JPMorgan Chase Bank, N.A.*, 937 F. Supp. 2d 849, 857 (N.D. Tex. 2013). The Whites' "arguments that merely question the validity of an assignment of a deed of trust . . . are not a sufficient basis for a quiet title action under Texas law." *Warren*, 566 F. App'x at 383.

As to slander of title, the Whites "must allege and prove: 1) the utterings and publishing of disparaging words; 2) that they were false; 3) that they were malicious; 4) that special damages were sustained thereby; 5) that the plaintiff possessed an estate or interest in the property disparaged; and 6) the loss of a specific sale." *Kallie v. Citi Residential Lending, Inc.*, No. H-18-4238, 2019 WL 398145, at *3 (S.D. Tex. Jan. 31, 2019). The Whites' slander-of-title claim is based on the defendants' alleged lack of authority to assign the note and deed. (Docket Entry No. 1 at 30). The Whites do not have standing to challenge the assignments, and they have not submitted or identified record evidence raising a factual issue as to any of this claim's elements.

D.     **Unjust Enrichment**

The Whites appear to argue that they are entitled to relief under an unjust-enrichment theory because the defendants assigned their mortgage to a mortgage-backed securities trust. (Docket Entry No. 1 at 19–21). "Unjust enrichment is an implied-contract basis for requiring restitution when it would be unjust to retain benefits received." *Perales v. Bank of Am., N.A.*, No. H-14-1791, 2014 WL 3907793, at *3 (S.D. Tex. Aug. 11, 2014) (citing *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.)). "It is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Id.* (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)).

The Whites' unjust-enrichment claim fails as a matter of law. Texas law is clear that "there can be no recovery for unjust enrichment under a quasi-contract or contract implied-in-law theory when a valid, express contract covers the subject matter of the parties' dispute." *Patterson v. Long Beach Mortg. Co.*, No. 3:7-CV-1602-O-BH, 2009 WL 4884151, at *8 (N.D. Tex. Dec. 15, 2009). The record shows that the note and deed govern the subject matter of the parties' dispute, entitling the defendants to summary judgment.

### E. The Fraud Allegations

The Whites assert a fraudulent-inducement claim. (Docket Entry No. 1 at 32–34). To survive summary judgment, the Whites must offer or point to record evidence raising an inference that: (1) the defendants made a misrepresentation; (2) the defendants knew that the misrepresentation was false and intended to induce the Whites to enter into the loan through that misrepresentation; (3) the Whites actually relied on the misrepresentation in entering into the loan; and (4) the Whites' reliance led them to suffer an injury by entering into the loan. *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012). The Whites must also show that they would not have agreed to the loan "in the absence of the misrepresentation." *Id.*

The Whites allege that the defendants misrepresented that they had authority to foreclose on and sell the home. (Docket Entry No. 1 at 32–33). The record does not support this allegation. The note and deed gave the defendants the right to foreclose on and sell the Whites' home if they defaulted. The Whites do not dispute that they defaulted and then failed to cure the default. Because the Whites have not submitted or identified evidence showing that the defendants lacked authority to foreclose or that they lacked a valid interest in the note and deed, the court has no basis to find that any representations the defendants made about their authority or interest were false.

Nor have the Whites submitted or identified evidence supporting an inference that Ameriquest represented that any of the defendants would remain the owner or holder the note or deed. The note defined the "Note Holder" to include "anyone who takes this Note by transfer and who is entitled to receive payments under this Note." (Docket Entry No. 16-1 at 1). The deed states that the note "can be sold one or more times without prior notice to" the Whites. (Docket Entry No. 16-2 at 11). The deed also states that:

> All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender,

> at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

(*Id.* at 15). These provisions allowed the defendants to sell or assign their interest in the note and deed, without consulting with, informing, or obtaining consent from, the Whites. The Whites have not identified evidence raising an inference that the defendants represented that they would not exercise this right. There is no basis to find that the defendants made any misrepresentations.

The complaint also alleges that the defendants failed to disclose that the loan would be assigned; what "the terms of the Securitization Agreements" were; and the "existence of Credit Enhancement Agreements" and "Acquisition Provisions." (Docket Entry No. 1 at 31). These allegations align more closely with a fraudulent-nondisclosure claim, which the Whites did not assert. Even assuming that the Whites had asserted this claim, they could not prevail.

"A defendant's failure to disclose information does not constitute fraud 'unless there is a duty to disclose the information.'" *Jay v. Wells Fargo for Option One Mortg. Loan Tr. 2006-2, Asset-Backed Certificates, Series 2006-2*, No. 1:17-CV-349-RP, 2018 WL 2944432, at *3 (W.D. Tex. June 12, 2018) (quoting *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001)). "[F]or a duty to disclose to arise, the parties must be in a confidential or fiduciary relationship." *Id.* "Lenders generally do not owe borrowers a fiduciary duty." *Id.* The Whites have not pointed to evidence supporting an inference that they had a special relationship of trust with the defendants. Nor have the Whites submitted or identified evidence supporting that they were in a "confidential" relationship with the defendants. *Id.* There is no factual dispute material to this issue. Because

the Whites have not shown that the defendants had a duty to disclose information, the Whites cannot prevail on a fraudulent-nondisclosure claim.[4]

F. The Remaining Claims[5]

The Whites assert that the defendants are liable for negligent and intentional infliction of emotional distress. (Docket Entry No. 1 at 38–39). Texas does not recognize a "duty not to negligently inflict emotional distress." *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993). As to intentional infliction of emotional distress, the Whites must show that the defendants "acted intentionally or recklessly"; their "conduct was extreme and outrageous"; and their "actions caused [the Whites severe] emotional distress." *Kroger Tex. Ltd. P'Ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Conduct is "extreme and outrageous" only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). The record evidence does not support a plausible inference that the Whites' emotional distress was severe, or that the defendants' conduct was "extreme and outrageous." *See*

---

[4] The Whites also allege that the defendants fraudulently concealed certain facts material to the loan agreements. (Docket Entry No. 1 at 30–32). Fraudulent concealment "estops a defendant to rely on the statute of limitations as an affirmative defense when the defendant owes a duty to disclose but fraudulently conceals the existence of a cause of action." *B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 54 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also Doe v. Baylor Univ.*, 313 F. Supp. 3d 786, 792 (W.D. Tex. 2018). While the defendants raise a statute-of-limitations defense against the Whites' allegations under the Truth in Lending Act, the complaint states only that the Whites are "entitled to rescind the loan" because of "TILA Violations," and because initial disclosures did not meet TILA standards. (Docket Entry No. 1 at 37–38). These allegations fail to satisfy Rule 8(a)'s notice requirement and, even if they did, the Whites have not submitted evidence showing that they were owed a duty of disclosure. The fraudulent-concealment doctrine does not apply.

[5] Count Two alleges that Ameriquest violated Pennsylvania's Fair Credit Extension Uniformity Act. (Docket Entry No. 1 at 21–22). The Whites have not explained why Pennsylvania law applies to their mortgage, and the note and deed stipulate that Texas law controls. (Docket Entry No. 16-1 at 4; Docket Entry No. 16-2 at 10). The court finds no basis in the record supporting this claim, entitling the defendants to summary judgment.

*Rodriguez v. Wells Fargo Bank, N.A.*, No. 7:18-CV-109, 2019 WL 528719, at *7 (S.D. Tex. Feb. 11, 2019).

The complaint alleges that the defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* To survive summary judgment, the Whites must point to evidence showing that the defendants are "debt collectors" under the Act. They failed to do so and, as a result, the Act does not apply. *See Montgomery v. Wells Fargo Bank, N.A.*, 459 F. App'x 424, 428 n.1 (5th Cir. 2012) ("mortgage lenders are not 'debt collectors' within the meaning of the" Act).

According to the Whites, the defendants are liable under RICO for "threatening to foreclose on the . . . property." (Docket Entry No. 1 at 41). A RICO claim requires a showing of "a pattern of racketeering activity" that is "connected to the acquisition, establishment, conduct, or control of an enterprise." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). The Fifth Circuit has explained that "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996). Here, the record shows that the "predicate acts" are the defendants' attempts to enforce their rights under the note and deed, not a "pattern of racketeering activity." *See Bordelon v. Wells Fargo Fin. La., LLC*, No. 18-2563, 2018 WL 2717521, at *5 (E.D. La. June 6, 2018).

There is no basis to rescind the Whites' mortgage agreement because they have shown no evidence of "fraud, mistake, or [why,] for some other reason, the court must set it aside to avoid unjust enrichment." *Belay v. Aegis Wholesale Corp.*, No. A-17-CV-545-LY-ML, 2018 WL 1833250, at *5 (W.D. Tex. Jan. 26, 2018) (quoting *Humphrey v. Camelot Ret. Cmty.*, 893 S.W.2d 55, 59 (Tex. App.—Corpus Christi 1994)). Nor are the Whites entitled to declaratory relief, which "cannot stand alone under either Texas law or federal law." *Taylor v. Ditech Fin., LLC*, No. H-

16-2465, 2017 WL 2362493, at *5 (S.D. Tex. May 31, 2017) (citing *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996)).

IV.     **Conclusion**

Summary judgment is granted for the defendants. (Docket Entry No. 16). The Whites' requests for injunctive and declaratory relief are denied. (Docket Entry No. 1 at 41–42). The court authorizes the defendants to assess their reasonable and necessary attorneys' fees to the loan secured by the Whites' home.

Final judgment is separately entered.

SIGNED on May 30, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge